Baker *v.* Crystol (Maryland Casualty Company, Appellant).

334

Argued October 1, 1936.  Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*E. C. Higbee,* of *Higbee, Matthews & Lewellyn,* for appellant.

*E. D. Brown,* with him *J. R. Smiley,* for appellee.

OPINION BY MR. JUSTICE STERN, November 23, 1936:

Plaintiff obtained a verdict against defendant for damages for injuries sustained by being struck by an automobile alleged to have been operated by defendant. Judgment was entered on the verdict and an attachment execution issued thereon, Maryland Casualty Company being named as garnishee.

Plaintiff claimed that garnishee had issued to defendant a policy of liability insurance covering the car involved in the accident. Garnishee, on the other hand, contended that the car by which plaintiff was injured was not the one insured by the policy. This formed the sole issue at the trial on the attachment execution. A verdict was rendered for plaintiff, but a new trial was awarded. At the retrial a verdict was again rendered for plaintiff. Garnishee filed motions for a new trial and for judgment n. o. v., and from the overruling of these motions has taken the present appeal. The assignments of error in regard to the refusal of a new trial are based upon alleged inadequacy of the charge and the qualifying of answers made to garnishee's points for charge. These assignments, as well as that which complains of the overruling of the motion for judgment n. o. v., all center around factual controversies bearing on the identification of the car.

Several witnesses testified to defendant's physical presence at the scene and time of the accident, and also

to the number 1C420 on the registration plates of the car which struck plaintiff. Admittedly this number had been issued for defendant's car, and, since the Motor Vehicle Act of May 1, 1929, P. L. 905, section 504, provides that no motor vehicle shall be operated under any other plates than those of its own registration except as provided in the act, there arose an inference or presumption that the car which figured in the accident was the one owned and registered by defendant. The car registered under the number 1C420 was described in the registration as a DeSoto sedan, engine No. SA 23591, Mfr.'s No. 5034032. The policy issued by garnishee to defendant described the car insured as a DeSoto sedan, Ser. No. SA-23591, Eng. No. 5034032. It appeared from the testimony that the serial number and manufacturer's number of a car are synonymous. It will be observed that the manufacturer's number in the registration was stated in the policy as the engine number, while the engine number in the registration was stated in the policy as the serial (i. e., manufacturer's) number, but this transposition was obviously the result of clerical error in writing the policy, as was practically admitted by garnishee at the trial, it being shown that no DeSoto car had ever been built with the numbers as written in the policy. Therefore there was no serious contention that the policy did not cover defendant's car registered under the number 1C420, and that number, as already stated, was, according to plaintiff's witnesses, on the registration plates attached to the car at the time of the accident. The identification of the registration number on the plates was sufficient in itself, therefore, to require the submission of the case to the jury.

Plaintiff, however, did not rely merely upon the registration plates. His son Robert testified that shortly after the accident defendant showed him the registration card, that he copied from it, on the leaf of a notebook or pad which he carried in his pocket, the registration number, engine number, manufacturer's number and the

name and address of defendant, and that he and defendant then checked all of these numbers on the car itself. This memorandum, put in evidence as plaintiff's exhibit B, is curious in that, instead of "Crystol" or "Crystal" as given on the registration card, the name appears on exhibit B as "Craystol"; the address on the registration card, "Wilmerding," is given on exhibit B as "Wilmerdean"; the engine number SA 23591 on the registration card is given on exhibit B as "Ser SA-23591"; and the manufacturer's number 5034032, as stated on the registration card, appears on exhibit B as "Eng 5034032." The same error of transposition of numbers which occurred on the insurance policy thus appears likewise on exhibit B, and garnishee contends that as the making of the same mistake by Robert Baker and by the clerk who wrote the policy would be a strange coincidence, it is likely that exhibit B was copied, not from the registration card at the time of the accident, but from the policy itself at some subsequent period. Defendant denied that either he or his car was present when the accident occurred, and therefore also denied, of course, that he showed his registration card to plaintiff's son at that time. The contradictions on this point and the question as to the genuineness of exhibit B as testified to by Robert Baker were necessarily for the jury.

The chief complaint of garnishee is in regard to the treatment of this subject by the learned trial judge in his charge. It appears that in the original trial at which plaintiff obtained a verdict against defendant, exhibit B was not presented nor referred to in the testimony, nor was there any evidence at that time that any such paper existed. In both of the trials of the issue between plaintiff and garnishee, Robert Baker testified that he had had the paper in his pocket at the time of the original trial, that plaintiff's counsel questioned him concerning it, that defendant's counsel interposed objections, that the court sustained the objections, and that this was the reason why exhibit B was not then pro-

duced. Plaintiff testified that he, also, was asked about the paper by his counsel but the questions were ruled out on objections of defendant's counsel. The record of the original trial being put in evidence showed that no questions in regard to such a paper as exhibit B had been asked, objected to, or ruled upon. Garnishee's counsel contends therefore that the testimony given by plaintiff and his son as to what occurred at the original trial as to exhibit B was wilfully false, and that the jury should have been so instructed. The learned trial judge, in addition to the usual instruction that they were to pass upon the credibility of the witnesses, told the jury that they should determine whether exhibit B had been written as testified to by Robert Baker, and that "if you find it was not written at that time, but was written afterwards, then you should disregard it entirely. And if you find, members of the jury, that Robert Baker did not write the paper at that time, and that this testimony is manufactured, and that Robert Baker's testimony as to this paper is not true, then your verdict should be for the garnishee." This was more than garnishee was entitled to, because even if Robert Baker's testimony on this particular issue was deliberately and intentionally untrue, there was, as already pointed out, enough other evidence to go to the jury to establish identification of the car. Garnishee's counsel, however, at the conclusion of the charge, asked the court to say further to the jury that, in view of the record of the original trial, Baker's testimony was not true, "and standing unexplained warrants the inference of falsity and wilfulness," and he requested the court to charge "more fully and adequately on that proposition and the law relating to it," but the court stated that in its opinion the instructions already given were adequate. Garnishee had presented a point for charge to the effect that the record was conclusive of the untruthfulness of the testimony given in regard to exhibit B and the jury would be warranted in wholly rejecting it and all the evidence based

on it; to which the court answered that the jury would be warranted in rejecting the exhibit if they found that the explanation of the failure to produce it at the original trial was not truthful and that the exhibit was not written by Robert Baker as he testified. Garnishee had also presented a point to the effect that the wilful falsehood of a witness would justify the belief that he was capable of any amount of falsification and that it would therefore be prudent to regard all that he said with strong suspicion and to place no reliance on his mere statements. The court affirmed this point "as a proposition of law," but left it to the jury "to determine whether or not any witness for plaintiff wilfully testified falsely."

We are of opinion that the charge of the learned trial judge, and the answers to the points submitted by garnishee, were adequate and free from error. Whatever the factual probabilities may have been, it could not have been said as a matter of law that the testimony under attack was wilfully false. It is possible, for example, that plaintiff and his son were honest, though mistaken, in their belief that some of the objections to testimony and rulings thereon at the original trial applied to the production of exhibit B, or it is also possible that they may have forgotten before the time of the subsequent trials what had happened at the original trial. It is to be noted that an apparently disinterested witness testified that he saw the paper, exhibit B, lying on a desk in plaintiff's home about ten days after the accident, which was long before the time of the original trial; there also were other witnesses who testified that shortly after the accident they saw Robert Baker and defendant examining the car together, this being by way of corroboration of the son's testimony as to their checking the numbers on the car to see if they corresponded with those on the registration card.

Because the car covered by the insurance policy was admittedly maroon colored, while Robert Baker testified that the car which struck his father was "dark blue or

black," garnishee complains that the learned trial judge erred in charging the jury that "in passing on the color of the car you should take into consideration the testimony as to the condition of the car at the time. Was the car dirty or clean? And was its real color clearly discernible?" Since there was testimony that the car was covered with dirt and mud, there was no error in this instruction.

The assignments of error are overruled and the judgment is affirmed.